FILED
2012 May-24 PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) MAG NO. 12-146 |
| | ) |
| WALTER JAMES STUART | ) |

### FINDING OF PROBABLE CAUSE AND ORDER OF DETENTION

On May 10, 2012 a complaint was filed by an agent of the United States alleging that Walter James Stuart unlawfully possessed a firearm on May 8 after having previously been convicted of felony offenses in the courts of the State of Alabama. (Doc. The Government made an oral motion that Mr. Stuart be detained pending trial. A detention and a preliminary hearing in accord with Rule 5.1 of the Federal Rules of Criminal Procedure was held. After consideration of the evidence presented the court finds there is probable cause to believe a federal offense has been committed and that Mr. Stuart is both a risk of flight and a danger to the community. It is ordered that he be detained without bond pending trial.

### OPERATIVE FACTS

Birmingham Police detective Christopher Lampley testified that on May 8, 2012 a black male approached two young women on or near the U.A.B. campus. The man produced a pistol and demanded the women surrender their purses. While one young woman gave him her purse immediately the second resisted. The robber then raised the pistol to her head and threaten to fire. She gave him her purse and he fled. The incident was observed by male witness who followed the assailant to a dark colored vehicle he believed was a Ford Crown Victoria. He telephone police and described the man as a "thick" dark skinned, black male wearing a white T-shirt.

Shortly thereafter after receiving the information about the robbery Birmingham patrol officers Smith and Shivers saw dark Mercury Marquis stopped on Lomb avenue near McMillian avenue not far from the scene of the robbery. A dark skinned heavy set black male wearing a white t-shirt got out of the drivers side. The officers stopped to investigate. They conducted a "pat down" and officer Shivers felt something hard in the driver's pocket. He asked the driver, later identified as Walter Stuart for permission to retrieve the object and Stuart consented. Shivers found four cells phones. Shivers began to handcuff Stuart telling him that he matched the description of the robber. Stuart resisted briefly but was handcuffed and place in the patrol car. Stuart told officers that he had run out of gas and had not "...committed no robbery". Then he said "before you search my car there is a gun and some purses in my vehicle..". Shivers asked if Stuart was giving the officer permission to search the car and Stuart said "yes".

In the trunk officers found a loaded Steyr 9mm pistol and two purses. The robber victims and the male witness were brought to the scene of the investigatory stop for a "show up". All three identified Stuart as the robber. Two of the cell phones in Stuart's pocket belonged to the victims and they each identified a purse in the car as belonging to one of them.

Birmingham police officer and ATF task force agent Edward Hull testified that he had test fired the pistol and it functioned properly . He also stated that the pistol had been manufactured outside of the State of Alabama. Hull also testified that he had reviewed the case file from Stuart's 1999 convictions for murder and attempted murder. Originally charged with Capital Murder Stuart was convicted of Felony murder and also of attempted murder. He shot two men during a robbery. Stuart sentenced to a split sentence was released in 2005 to begin the probationary component of the sentence. In the same year a probation revocation warrant was issued. Stuart traveled to

California and did not return until 2008 when the warrant was executed. His probation was extended through May of 2011.

He is also currently the subject of a fugitive from justice warrant issued in California.

There is no statutory presumption in favor of pretrial detention applicable the the charged offense.  The defendant may nonetheless be detained if he poses a serious risk of flight or there is clear and convincing evidence that he is a danger to the community. see *18 U.S.C. § 3142(f)(2)(B)*("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."). Risk of flight must be established by a preponderance of the evidence. See *United States v. Cisneros*, 328 F.3d at 610, 612 (10th Cir.2003).

In *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) the Supreme Court upheld Section 3142 against constitutional challenges because detention involved a regulatory function of protection of the community, not interim punishment for being charged with certain offenses:

> We conclude that the detention imposed by the Act falls on the regulatory side of the dichotomy. The legislative history of the Bail Reform Act clearly indicates that Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals. See S.Rep. No. 98–225, at 8. Congress instead perceived pretrial detention as a potential solution to a pressing societal problem. Id., at 4–7.
>
> The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes.

> We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest.
>
> \*\*\*
>
> We have approved of post arrest regulatory detention of juveniles when they present a continuing danger to the community.
>
> \*\*\*
>
> The government's interest in preventing crime by arrestees is both legitimate and compelling.

*Id.* at 747, 748, 749    The Bail Reform Act, narrowly focuses on a particularly acute problem in which the Government interests are overwhelming. The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses. *18 U.S.C. § 3142(f)*. Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest.... The Government must first of all demonstrate probable cause to believe that the charged crime has been committed by the arrestee, but that is not enough. In a full-blown adversary hearing, the Government must convince a neutral decision maker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person. *18 U.S.C. § 3142(f)*. While the Government's general interest in preventing crime is compelling, even this interest is heightened when the Government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. Under these narrow circumstances, society's interest in crime prevention is at its greatest.

## 18 U.S.C. § 3142(g) FACTORS

(1) The specific offense charged is not itself a crime of violence however, in this case the possession of a firearm occurred in part during the commission of a crime of violence.

(2) The weight of the evidence is sufficient to establish probable cause.

(3) History and characteristics of Walter James Stuart

Mr. Stuart is 30 years old. He has not held a steady job since his release from prison in 2004 although he has cut grass since his return from California in 2008.  He is not married but lives with the mother of a his five month old daughter. He has been convicted of murder and attempted murder, both of which occurred during an armed robbery. While in prison he was charged with insubordination, violation of rules, and fighting. There is an outstanding fugitive from justice warrant from California.

(4) Assessment of danger and risk of flight.  Mr. Stuart killed one person and shot another during an armed robbery. There is probable cause to believe that he committed an robbery of two young women in May, 2012.  He intentionally threaten one victim with his weapon when she resisted.

He is in that narrow class of dangerous defendants.  Moreover, there is evidence that Mr. Stuart has limited ties to Alabama and has demonstrated an ability to travel while supposedly  under supervision. He has an outstanding warrant charging him with being a fugitive.

He is a risk of flight and there is clear and convincing evidence that he is a danger to the community .  It ORDERED that he be detained without bond.

It is FURTHER ORDERED that the defendant be committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate to the extent practicable from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultations with counsel.  On order of this Court or on request from an attorney for the United States, the person in

charge of the corrections facility in which the defendant is confined will deliver the defendant to the United States Marshal for purpose of appearance in connection with a Court proceeding.

The clerk is DIRECTED to serve a copy of this order upon counsel for defendant and the United States Attorney for the Northern District of Alabama.

As to the foregoing it is SO ORDERED this the 24th day of May, 2012.

_____
PAUL W. GREENE
CHIEF, U.S. MAGISTRATE JUDGE